# UNITED STATES DISTRICT COURT

**EASTERN** DISTRICT OF **CALIFORNIA**

**FILED**

MAR 19 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

---oOo---

UNITED STATES OF AMERICA

V.

BALLTAZAR O. VALLADARES

112 Elm Street, Roseville, California

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 09mj 0092 EFB

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about **March 16, 2009** in **Placer** County, in the Eastern District of California defendant(s) did, (Track Statutory Language of Offense)

▸ interfere with, with a reckless disregard for the safety of human life, a person engaged in the authorized operation of an aircraft in the special aircraft jurisdiction of the United States

in violation of Title **18**, United States Code, Section(s) **32(a)(5)**. I further state that I am a(n) Federal Air Marshal and that this complaint is based on the following facts:

▸ **See Attachment**

Continued on the attached sheet and made a part of this complaint:  **x**  _____

Signature of Complainant  FAM TIMOTHY L. CHILDS
Federal Air Marshals, TSA, DHS

Sworn to before me, and signed in my presence
March 19, 2009                                   at   Sacramento, California

Date                                                        City            State

HON. EDMUND F. BRENNAN
U.S. Magistrate Judge                                    _____
                                                         Signature of Judge

Name of Judge          Title of Judge

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Timothy Childs, being duly sworn, do hereby depose and state:

### AFFIANT BACKGROUND AND EXPERIENCE

I am a Federal Air Marshal of the United States Federal Air Marshal Service and have been so for approximately 5 years. I am currently assigned to the Federal Bureau of Investigation's (FBI) Joint Terrorism Task Force (JTTF), Sacramento Division at Sacramento, California and have been so assigned for the past nine months. As a Federal Air Marshal, I am authorized to conduct investigations, request and receive information relating to offenses; seek and execute search and arrest warrants; serve subpoenas and summons; administer oaths; make arrests without warrant; and carry firearms. As part of my duties I am charged with investigating violations of the laws of the United States including offenses involving crimes against transportation systems and interference with flight crews.

I have investigated crimes involving laser devices on one other separate occasion. On or about March 6, 2009 while assigned to the FBI JTTF Sacramento Division at Sacramento, I was involved in the investigation of a juvenile pointing a handheld laser at a Sacramento Police Department Helicopter. The laser was confiscated and the Juvenile was arrested for violating California Penal Code section 247.5 discharging a laser at an aircraft.

As part of my duties I have read materials and attended training regarding the unauthorized laser illumination of aircraft. I know that it is dangerous to point a laser at an aircraft because it can cause eye damage and even blindness to people aboard, including to the person flying the aircraft.

This affidavit is based upon my own personal knowledge of the events set forth herein, as well as information provided to me by other law enforcement personnel.

### CRIMINAL OFFENSE AND PERSON CHARGED

The purpose of this affidavit to support a complaint charging that BALLTAZAR

1

ORTEGA VALLADARES, in Placer County on March 16, 2009, violated Title 18, United States Code, Section 32(a)(5), which makes it a felony to interfere with or disable, with intent to endanger the safety of any person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of any aircraft in the special aircraft jurisdiction of the United States or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce. The "special aircraft jurisdiction of the United States" encompasses any civil aircraft of the United States and any aircraft in the United States. 18 U.S.C. § 31(b), incorporating 49 U.S.C. § 46501(2).

A search of California Law Enforcement Telecommunications System (CLETS) reveals that VALLARDES has numerous arrests and the following convictions:

| Date, Location | Conviction |
|---|---|
| August 3, 1998, Auburn: | Cal. H. & S. C. § 11364 (misd. poss. paraphernalia) |
| April 5, 2002, Placer: | Cal. P.C. § 488 (misd. petty theft) |
| June 5, 2003, Indio | Cal. H. & S. C. § 11364 (misd. poss. paraphernalia) |
| Oct. 23, 2003, Placer | Cal. V.C. § 12500(a) (misd. driving w/o lic.); Cal. P.C. 12020(a) (misd. weapon) - 8 months prison from revocation on Nov. 9, 2005 |
| Nov. 9, 2005, Tracy | Cal. P.C. § 273.5(a) (felony infl. corp. inj. on spouse/cohab) - 2 years prison |
| Apr. 17, 2008, Placer | Cal. H. & S. § 11550(a) (misd. use/under infl. contr. subst) |
| Sept. 25, 2008, Placer | Cal. H. & S. § 11377(a) (felony contr. subst) |

### FACTS SUPPORTING PROBABLE CAUSE

I learned the following from investigation, from interviews of a potential witness and VALLADARES, and my review of law enforcement reports prepared in this case.

*Southwest Airlines Flight is "Lasered" on Approach to*
*Sacramento International Airport and Authorities Conduct Initial Investigation*

On March 16, 2009, at approximately 8:00 P.M. Southwest Flight 1010, Las Vegas to Sacramento, a Boeing 737, was west-bound on approach to Sacramento International Airport,

1 approximately four to five miles north of McClellan Airfield, at an altitude of approximately
2 4000 feet above ground level (AGL) with 137 passengers on board. Present in the cockpit were
3 Captain James Taylor, Co-Pilot Lawrence Story, and Jump Seat Pilot Brain Tomproski. At that
4 time, a green flashing light that looked like a laser hit the left side window of the cockpit. From
5 the cockpit, the laser appeared to flash or pulse approximately 6 to 8 times over a 4-to-5-second
6 period of time, each pulse lasting approximately ¼ of a second. Jump seat pilot Brain Tomproski,
7 having been struck by a laser before, immediately recognized the threat and informed his fellow
8 pilots that he believed they were being tracked by a laser and told them how to protect
9 themselves and the aircraft. All the occupants of the cockpit were able to divert their eyes. There
10 was no sustained interference with the flight operations and the crew incurred no injuries.
11       Air Traffic Control (ATC) was notified in compliance with FAA regulations and Michael
12 Desrosiers, Operations Manager of the Terminal Radar Approach Control Facility (TRACON),
13 was on duty when the ATC operator was contacted. Manager Desrosiers estimated the location of
14 the aircraft at the time ATC was notified and estimated the air craft was positioned
15 approximately six miles northeast of the McClellan Airfield. This information was relayed to the
16 Sacramento Sheriff's Department Communications Center at approximately 8:25 P.M.. The
17 Sacramento Police Department's Air Unit AIR 1 was able to initially respond to corresponding
18 Ground Positioning Satellite (GPS) coordinates that matched that area described by TRACON in
19 support of the call but was unable to locate the source of the laser.
20       At approximately 8:12 P.M. the Sacramento Sheriff's Department Airport Division
21 Deputies met the cockpit crew at Gate A10 and took their statements regarding the incident
22 which was completed by approximately 8:30 P.M. It was at this time Captain Taylor estimated
23 that the plane's location at the time of the laser strike was actually approximately four to five
24 miles northeast of McClellan Airfield above what appeared to be "three large parking lots." The
25 laser seemed to be emanating from a fixed point south of the "parking lots."
26
27       *Subsequent Investigation by Sacramento Sheriff's Department Air Unit*
28       Later, at approximately 10:50 P.M., Sacramento Sheriff's Department Air Unit STAR 5

1  was in service and contacted Sacramento Sheriff's Department Airport Division to inquire if
2  there was any further information about the earlier laser event. STAR 5 was piloted by Deputy J.
3  Werblun, who has a current FAA commercial pilot license (#2760102).
4  　　　　The results and location searched by AIR 1 were communicated along with the more
5  detailed, refined location estimate that the pilot had given. STAR 5 then proceeded to fly over the
6  Roseville Rail Yard, which to their estimation could appear as three large parking lots from the
7  altitude that Southwest Flight 1010 was operating at and is located approximately four miles
8  northeast of McClellan Airfield.
9  　　　　While STAR 5 was over the rail yard, a high-power green laser illuminated the cockpit of
10 the helicopter and remained on continuously until the Helicopter was only ½ a mile from the
11 source of the laser.
12 　　　　The STAR 5 crew saw that the laser came from outside a small detached cottage near the
13 rear of a small apartment building located at 112 Elm Street in Roseville. When STAR 5
14 approached the cottage, the lights in front of the cottage were illuminated. As STAR 5 directed
15 ground officers to the location, those lights were turned off.
16
17 　　　　　　　*Ground-Based Roseville Police Officers find Laser and Obtain Confession*
18 　　　　As directed by STAR 5, Roseville Police Officers Price, Stokes, and Sidebottom arrived
19 at the small cottage behind 112 Elm Street. Upon arrival the lights were on inside the cottage and
20 the officers could hear noises coming from inside the cottage. The occupant(s) refused to answer
21 the officers call to come to the door. They heard from a person who claimed personal knowledge
22 that VALLADARES and his mother lived in the cottage and that VALLADARES did have a
23 laser.
24 　　　　Officers kicked at the bottom of the door and shouted to VALLADARES that if he did
25 not open the door, they would kick it open. VALLADARES opened the door, and officers
26 entered the cottage. There, they identified VALLADARES and learned from him that he was on
27 probation for drug charges. VALLADARES initially denied knowing anything about a laser
28 device. Searching pursuant to VALLADARES's probation condition, the officers found a

1  handheld laser in two pieces in different parts of the room. ~~The~~ They arrested and Mirandized him.
2  VALLADARES admitted that the laser was his, that he had shined the laser into the sky that
3  evening and at the police helicopter. He denied shining a laser at an airliner.
4      The officers reassembled the laser and tested it. It cast a bright, powerful
5  green light.

### Your Affiant Re-Interviews VALLARDES

7      Your affiant went to the Roseville Police Department to interview VALLADARES
8  concerning the events of the evening. VALLADARES admitted to having the laser for about a
9  month and having spent some time each week, at least once a week, late at night entertaining
10 himself by shining the laser on various objects around Roseville, both on the ground and in the
11 air, including at trains in the rail yard and what he called the "Ghetto Bird" that evening. (I know
12 that "Ghetto Bird" is a slang term for police helicopter.) VALLADARES admitted shining the
13 laser into the sky throughout the evening, but claimed that he did not deliberately shine the laser
14 on a commercial jetliner. He did specifically admitted that he was aware that the helicopter he
15 was shining the laser at was a police helicopter. VALLADARES admitted to knowing that the
16 laser he possessed was "very powerful" and was able to illuminate objects "very far away."
17 VALLADARES also admitted to knowing that shining a laser in a person's eyes could cause
18 both temporary and/or permanent blindness or other eye damage. VALLADARES stated that he
19 knew he had done something wrong and that is why he attempted to avoid the police.
20 VALLADARES stated that reason that he took the laser apart and hid the pieces and initially
21 denied any wrongdoing was that he was aware that he had done something wrong and was in
22 trouble. He said that he tried to hide the laser so that he could deny shining it on the helicopter.
23 During the interview, VALLARDES told me that he had had three or four 40-ounce beers over
24 the course of the entire day. To me, he seemed lucid and unimpaired. I could not smell alcohol
25 on him.
26     Your affiant has tested the laser seized from VALLARDES's residence. It ~~is~~ casts a
27 bright, powerful green light.
28

## CONCLUSION

Based upon the forgoing, I believe that there is probable cause to believe that BALLTAZAR ORTEGA VALLADARES did interfere with, with a reckless disregard for the safety of human life, a person engaged in the authorized operation of Sacramento Sheriff's Department STAR 5, an aircraft in the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. § 32(a)(5).

The foregoing is true and correct.

Timothy L. Childs
Federal Air Marshal,
Transportation Security Administration,
Department of Homeland Security

Approved as to form,

MATTHEW D. SEGAL
Assistant U.S. Attorney

Sworn and subscribed before me this ___ day of March, 2009.

HON. EDMUND F. BRENNAN
U.S. Magistrate Judge

6