1  LAWRENCE G. BROWN
   Acting United States Attorney
2  MATTHEW D. SEGAL
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2708

**FILED**

JUN - 8 2009

**CLERK, U.S. DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
BY _____
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:09-CR-153 WBS |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| BALLTAZAR O. VALLADARES, | DATE: June 8, 2009 |
| Defendant(s). | TIME: 8:30 a.m. |
| | COURT: Hon. William B. Shubb |

**I.**

**INTRODUCTION**

**A.  Scope of Agreement:**  The indictment in this case charges the
defendant with two counts of interference with the operation of an
aircraft.  This document contains the complete plea agreement between
the United States Attorney's Office for the Eastern District of
California (the "government") and the defendant regarding this case.
This plea agreement is limited to the United States Attorney's Office
for the Eastern District of California and cannot bind any other
federal, state, or local prosecuting, administrative, or regulatory
authorities.

1

1    **B.   Court Not a Party:**  The Court is not a party to this plea
2  agreement.   Sentencing is a matter solely within the discretion of
3  the Court, the Court is under no obligation to accept any
4  recommendations made by the government, and the Court may in its
5  discretion impose any sentence it deems appropriate up to and
6  including the statutory maximum stated in this plea agreement.   If
7  the Court should impose any sentence up to the maximum established by
8  the statute, the defendant cannot, for that reason alone, withdraw
9  his guilty plea, and he will remain bound to fulfill all of the
10  obligations under this plea agreement.   The defendant understands
11  that neither the prosecutor, defense counsel, nor the Court can make
12  a binding prediction or promise regarding the sentence he will
13  receive.

14                                    **II.**

15                        **DEFENDANT'S OBLIGATIONS**

16    **A.   Guilty Plea:**   The defendant will plead guilty to Count 2,
17  which charges the defendant with interference with the safe operation
18  of an aircraft in violation of 18 U.S.C. § 32(a)(5) and (a)(8).   The
19  defendant agrees that he is in fact guilty of these charges and that
20  the facts set forth in the Factual Basis For Plea attached hereto as
21  Exhibit A are accurate.

22    **B.   Restitution:**  The Mandatory Victim Restitution Act requires
23  the Court to order restitution to the victims of certain offenses.
24  Payment should be by cashier's or certified check made payable to the
25  Clerk of the Court.   Defendant further agrees that he will not seek
26  to discharge any restitution obligation or any part of such
27  obligation in any bankruptcy proceeding.

28    **C.   Fine:**   The defendant agrees to pay whatever criminal fine

                                    2

1 the Court might order.  The defendant understands that this plea
2 agreement is voidable by the government if he fails to pay the
3 stipulated fine as required by this plea agreement.

4 **D.  Special Assessment:**  The defendant agrees to pay a special
5 assessment of $100 at the time of sentencing by delivering a check or
6 money order payable to the United States District Court to the United
7 States Probation Office immediately before the sentencing hearing.
8 If the defendant is unable to pay the special assessment at the time
9 of sentencing, he agrees to earn the money to pay the assessment, if
10 necessary by participating in the Inmate Financial Responsibility
11 Program.

12 **E. Forfeiture:**  The defendant agrees to abandon all of his right
13 title and interest to the United States in an abandonment or
14 forfeiture proceeding to the laser seized at the time of his arrest
15 on March 16, 2009.  He agrees that the government may retain,
16 destroy, or convey the laser at the government's sole discretion.

17 The defendant agrees not to file a claim to any of the listed
18 property in any civil proceeding, administrative or judicial, which
19 may be initiated.  The defendant agrees to waive his right to notice
20 of any abandonment or forfeiture proceeding involving this property,
21 and agrees to not file a claim or assist others in filing a claim in
22 that abandonment or forfeiture proceeding.

23 **III.**

24 **THE GOVERNMENT'S OBLIGATIONS**

25 **A.  Dismissals:**  The government agrees to move, at the time of
26 sentencing, to dismiss without prejudice the remaining count in the
27 pending indictment.  The government also agrees not to reinstate any
28 dismissed count except as provided in Paragraph VII.B.

3

1      **B.   Recommendations:**

2            **1.   Incarceration Range:**  The government will agrees not to

3      recommend a sentence greater than 41 months imprisonment.

4            **2.   Acceptance of Responsibility:**  If the United States

5      Probation Office determines that a three-level reduction in the

6      defendant's offense level for his full and clear demonstration of

7      acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1,

8      the government will not oppose such a reduction and will so move

9      under § 3E1.1(b), so long as the defendant pleads guilty, meets with

10     and assists the probation officer in the preparation of the pre-

11     sentence report, is truthful and candid with the probation officer,

12     and does not otherwise engage in conduct that constitutes obstruction

13     of justice within the meaning of U.S.S.G § 3C1.1, either in the

14     preparation of the pre-sentence report or during the sentencing

15     proceeding.

16                                    **IV.**

17                         **ELEMENTS OF THE OFFENSE**

18           At a trial, the government would have to prove beyond a

19     reasonable doubt the following elements of the offense(s) to which

20     the defendant is pleading guilty,

21           First, the defendant intentionally interfered with or attempted

22     to interfere with or disable a person who was operating an aircraft,

23           Second, the person was authorized to operate the aircraft,

24           Third, the aircraft was a civil, armed, or other aircraft in

25     flight in the United States.

26        An aircraft is "in flight" from the moment all external doors

27     are closed following boarding through the moment when one external

28     door is opened to allow passengers to leave the aircraft or until, if

                                       4

fourth, the defendant acted with reckless disregard
for the safety of human life.



1  a forced landing, competent authorities take over responsibility for
2  the aircraft and individuals and property on the aircraft.

## V.

## MAXIMUM SENTENCE

5  **A.  Maximum Penalty:**  The maximum sentence that the Court can
6  impose is 20 years of incarceration, a fine of $250,000, a 3-year
7  period of supervised release and a special assessment of $100.  By
8  signing this plea agreement, the defendant also agrees that the Court
9  can order the payment of restitution for the full loss caused by the
10 defendant's wrongful conduct.  The defendant agrees that the
11 restitution order is not restricted to the amounts alleged in the
12 specific counts to which the defendant is pleading guilty.  The
13 defendant further agrees that  he will not attempt to discharge in
14 any present or future bankruptcy proceeding any restitution imposed
15 by the Court.

16 **B.  Violations of Supervised Release:** The defendant understands
17 that if he violates a condition of supervised release at any time
18 during the term of supervised release, the Court may revoke the term
19 of supervised release and require the defendant to serve up to 2
20 additional years imprisonment.

## VI.

## SENTENCING DETERMINATION

23 **A.  Statutory Authority:**  The defendant understands that the
24 Court must consult the Federal Sentencing Guidelines (as promulgated
25 by the Sentencing Commission pursuant to the Sentencing Reform Act of
26 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
27 modified by United States v. Booker and United States v. Fanfan,
28 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into

5

1  account when determining a final sentence.  The defendant understands
2  that the Court will determine a non-binding and advisory guideline
3  sentencing range for this case pursuant to the Sentencing Guidelines.
4  The defendant further understands that the Court will consider whether
5  there is a basis for departure from the guideline sentencing range
6  (either above or below the guideline sentencing range) because there
7  exists an aggravating or mitigating circumstance of a kind, or to a
8  degree, not adequately taken into consideration by the Sentencing
9  Commission in formulating the Guidelines.  The defendant further
10 understands that the Court, after consultation and consideration of
11 the Sentencing Guidelines, must impose a sentence that is reasonable
12 in light of the factors set forth in 18 U.S.C. § 3553(a).

13     **B.  Stipulations Affecting Sentence:** The parties agree that the
14 Court should sentence the defendant within the following range: 30-41
15 months.  The defendant agrees not to request a sentence below 30
16 months and the government agrees not to request a sentence above 41
17 months.

## VII.

## WAIVERS

20     **A.  Waiver of Constitutional Rights:** The defendant understands
21 that by pleading guilty he is waiving the following constitutional
22 rights:  (a) to plead not guilty and to persist in that plea if
23 already made; (b) to be tried by a jury; (c) to be assisted at trial
24 by an attorney, who would be appointed if necessary; (d) to subpoena
25 witnesses to testify on his behalf; (e) to confront and cross-examine
26 witnesses against him; and (f) not to be compelled to incriminate
27 himself.

28     **B.  Waiver of Appeal and Collateral Attack:** The defendant

6

1 understands that the law gives him a right to appeal his conviction
2 and sentence. He agrees as part of his plea, however, to give up the
3 right to appeal the conviction and the right to appeal any aspect of
4 the sentence imposed in this case, so long as the sentence is no
5 greater than the statutory maximum for the offense to which he is
6 pleading guilty. He specifically gives up his right to appeal any
7 order of restitution the Court may impose.

8 Also regardless of the sentence he receives, the defendant also
9 gives up any right he may have to bring a post-appeal attack on his
10 conviction or his sentence. He specifically agrees not to file a
11 motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
12 sentence.

13 Notwithstanding the agreement in paragraph III. A. above that the
14 government will move to dismiss counts against the defendant, if the
15 defendant ever attempts to vacate his plea, dismiss the underlying
16 charges, or reduce or set aside his sentence on any of the counts to
17 which he is pleading guilty, the government shall have the right (1)
18 to prosecute the defendant on any of the counts to which he pleaded
19 guilty; (2) to reinstate any counts that may be dismissed pursuant to
20 this plea agreement; and (3) to file any new charges that would
21 otherwise be barred by this plea agreement. The decision to pursue
22 any or all of these options is solely in the discretion of the United
23 States Attorney's Office. By signing this plea agreement, the
24 defendant agrees to waive any objections, motions, and defenses he
25 might have to the government's decision. In particular, he agrees not
26 to raise any objections based on the passage of time with respect to
27 such counts including, but not limited to, any statutes of limitation
28 or any objections based on the Speedy Trial Act or the Speedy Trial

7

1  Clause of the Sixth Amendment.

2      **C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to
3  waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119
4  (Nov. 26, 1997), to recover attorneys' fees or other litigation
5  expenses in connection with the investigation and prosecution of all
6  charges in the above-captioned matter and of any related allegations
7  (including without limitation any charges to be dismissed pursuant to
8  this plea agreement and any charges previously dismissed).

9      **D. Waiver of DNA Testing:** Defendant has been advised that the
10  government has in its possession the following items of physical
11  evidence that could be subjected to DNA testing: the laser seized on
12  March 16, 2009 and any other items described in discovery.

13      The defendant understands that the government does not intend to
14  conduct DNA testing of any items.

15      Defendant understands that, before entering guilty plea pursuant
16  to this plea agreement, he could request DNA testing of evidence in
17  this case.  The defendant further understands that, with respect to
18  the offense(s) to which he is pleading guilty pursuant to this plea
19  agreement, he would have the right to request DNA testing of evidence
20  after conviction under the conditions specified in 18 U.S.C. § 3600.
21  Knowing and understanding his right to request DNA testing, the
22  defendant knowingly and voluntarily gives up that right with respect
23  to both the specific items listed above and any other items of
24  evidence there may be in this case that might be amenable to DNA
25  testing.  The defendant understands and acknowledges that by giving up
26  this right, he is giving up any ability to request DNA testing of
27  evidence in this case in the current proceeding, in any proceeding
28  after conviction under 18 U.S.C. § 3600, and in any other proceeding

8

1  of any type.  The defendant further understands and acknowledges that
2  by giving up this right, he will never have another opportunity to
3  have the evidence in this case, whether or not listed above, submitted
4  for DNA testing, or to employ the results of DNA testing to support a
5  claim that defendant is innocent of the offense(s) to which he is
6  pleading guilty.

7                              **VIII.**

8                      **ENTIRE PLEA AGREEMENT**

9       Other than this plea agreement, no agreement, understanding,
10  promise, or condition between the government and the defendant exists,
11  nor will such agreement, understanding, promise, or condition exist
12  unless it is committed to writing and signed by the defendant, counsel
13  for the defendant, and counsel for the United States.

14                              **IX.**

15                    **APPROVALS AND SIGNATURES**

16      **A.   Defense Counsel:**  I have read this plea agreement and have
17  discussed it fully with my client.  The plea agreement accurately and
18  completely sets forth the entirety of the agreement.  I concur
19  in my client's decision to plead guilty as set forth in this plea
20  agreement.

21

22  DATED:  _____6|8|09_____    _____
                                    ALEXANDRA P. NEGIN
23                                  Attorney for Defendant

24      **B.   Defendant:**  I have read this plea agreement and carefully
25  reviewed every part of it with my attorney.  I understand it, and I
26  voluntarily agree to it.  Further, I have consulted with my attorney
27  and fully understand my rights with respect to the provisions of the
28  Sentencing Guidelines that may apply to my case.  No other promises or

                                  9

1  inducements have been made to me, other than those contained in this
2  plea agreement.  In addition, no one has threatened or forced me in
3  any way to enter into this plea agreement.  Finally, I am satisfied
4  with the representation of my attorney in this case.
5
6  DATED:  _Ce/8/09_
                                        _____
                                        BALLTAZAR O. VALLADARES, Defendant
7
      C.  **Attorney for United States:**  I accept and agree to this plea
8
   agreement on behalf of the government.
9
10
                            LAWRENCE G. BROWN
11                          Acting United States Attorney
12
13  DATED:  _June 8, 2009_        By:  _____
                                        MATTHEW D. SEGAL
14                                      Assistant U.S. Attorney
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                  10

1

2

### EXHIBIT "A"

3

### Factual Basis for Plea Plea

4    On March 16, 2009, at approximately 8:00 P.M., Southwest Flight 1010, Las Vegas to Sacramento, a Boeing 737, was on approach to land at Sacramento International Airport with 137 passengers on board.  At
5    that time, a green flashing light that looked like a laser hit the left side window of the cockpit.  From the cockpit, the laser appeared
6    to flash approximately 6 to 8 times over a 4-to-5-second period of time.  All the occupants of the cockpit were able to avert their eyes.

7

8    The crew radioed to the ground the approximate source of the laser light.  Sacramento Police Department helicopter AIR 1 flew to the area identified, but was unable to locate the source of the laser.

9

10   Once on the ground, the plane's captain refined his estimate of the source of the laser.  At approximately 10:50 P.M., Sacramento Sheriff's Department Air Unit STAR 5 flew to the newly identified
11   area, which was near the Roseville Rail Yard.  STAR 5 was piloted by a sheriff's deputy who had a current FAA commercial pilot license.
12   Prior STAR 5's taking off, its doors had been closed after boarding and STAR 5 was, at all times material, still in the air.

13

14   While STAR 5 was over the rail yard, a high-power green laser illuminated the cockpit of the helicopter.  The pilot flew STAR 5 towards the laser source, which remained on STAR 5 continuously until
15   the helicopter was only ½ a mile from the source of the laser.

16   The laser came from outside a small detached cottage near the rear of a small apartment building.  When STAR 5 approached the
17   cottage, the lights in front of the cottage were illuminated. As STAR 5 directed ground officers to the location, those lights were turned
18   off.

19   Roseville Police Officers arrived at the small cottage.  The officers eventually gained entry to the cottage, and VALLADARES was
20   the only person inside.  VALLADARES initially denied knowing anything about a laser device.  Searching pursuant to VALLADARES's probation
21   condition, the officers found a handheld laser in two pieces in different parts of the room. They arrested and Mirandized him.
22   VALLADARES admitted that the laser was his, that he had shined the laser into the sky that evening and at the police helicopter.  He
23   denied shining a laser at any airliner.  The officers reassembled the laser and tested it.  It was green.

24

25   A Federal Air Marshal (FAM) went to the Roseville Police Department to interview VALLADARES concerning the events of the evening.  VALLADARES admitted to having the laser for about a month
26   and to using it each week to entertain himself at night.  He admitted to shining the laser than night and admitted that he had shined it at
27   the police helicopter knowing that it was a police helicopter.  He claimed that he did not deliberately shine the laser on a commercial
28   jetliner.  Valladares said that he had been drinking.

A-1

1    VALLADARES admitted to knowing that the laser he possessed was
     "very powerful" and was able to illuminate objects "very far away."
2  VALLADARES also admitted to knowing that shining a laser in a person's
     eyes could cause both temporary and/or permanent blindness or other
3  eye damage. VALLADARES stated that he knew he had done something wrong
     and that is why he attempted to avoid the police.   VALLADARES   stated
4  that reason that he took the laser apart and hid the pieces and
     initially denied any wrongdoing was that he was aware that he had done
5  something wrong and was in trouble.

6        Agents interviewed the person who gave VALLADARES the laser.   The
     person woman said that she had given VALLADARES a green laser.   The
7  laser had warning labels and it came in a box that had a tri-fold
     safety manual.   The person told the FAM that she specifically told
8  VALLADARES that the light could be blinding.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A-2