DANIEL J. BRODERICK, Bar #89424
Federal Defender
LEXI NEGIN,  Bar #250376
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorneys for Defendant
BALLTAZAR VALLADARES

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 09-153 (WBS) |
| Plaintiff, | ) ) ) | **DEFENDANT'S MEMORANDUM IN AID** |
| v. | ) ) | **OF  SENTENCING** |
| BALLTAZAR VALLADARES | ) ) | Sentencing Date: September 8, 2009 |
| Defendant. | ) ) | Time:  8:30 a.m. Judge William B. Shubb |
| _____ | ) ) | |

      Mr. Balltazar Valladares, by and through undersigned counsel, respectfully requests that the Court sentencing him to a period of 30 months incarceration.  Such a sentence considers the factors set forth in 18 U.S.C. §3553(a) and is a sentence which is sufficient, but not greater than necessary, to achieve the purposes of those factors.

      At the time of this offense, Mr. Valladares, who is thirty years old, lived with his mother in a small cottage behind the home of his sister and her family.  Mr. Valladares is close with his parents, two of his sisters, and their children.  He is also close with his daughter, whose custody he has given to her adult half-sister who can better care for her.

      At the time of the offense, Mr. Valladares was working as a valet parking attendant and doing odd jobs, such as car mechanic work, for income.  He was on probation for in Placer County, and was in the proposition 36 drug diversion and treatment program.  Although he was close to his counselor and appreciating the counseling he received in the program, he admits that he was continuing to drink alcohol and not embracing sobriety in the way that one needs to for rehabilitation.  On the night of this offense, he had consumed a large amount of beer after work and was hanging out at his home.

Prior to the offense, he had seen a female friend at a party and she had a green laser pointer that she was playing with outdoors at the party. Mr. Valladares had not seen a laser pointer like this one and she let him play with it also. She explained that her boss at work had given the lasers to employees as a gift. After that occasion, Mr. Valladares had helped this same friend with fixing the brakes on her car. She could not afford to pay him money for the help, so he suggested that she give him the laser pointer in exchange for the brake job, which she did.

A laser pointer like the kind in this case is available commercially and can be purchased on the internet for a range of prices starting at about $50.00. It is a laser that emits a green light and is more powerful that the typical red pen-like lasers that, for example, we use in court to illuminate something on the screen for jurors. Among other things, the lasers are used for astronomy, hunting, as emergency devices for outdoor enthusiasts in the event of getting lost, and in construction.

After he got the laser Mr. Valladares spent many nights entertaining himself with it in his back yard after consuming a few beers. He very commonly pointed it up at the stars, at trees, and anywhere he could. While aware that a laser could cause damage if shined directly into someone's eyes, when shining it at far away objects, he did not take the care to think that it could shine into someone's eyes and cause harm to them at that distance.

Mr. Valladares' sisters have told me that there were many times when he would play with the laser with his neices and nephews, shining it on various objects and letting them play with it as well. While he warned them not to shine it in someone's eyes, he treated it as a toy that could certainly be dangerous if wrongly used, like most toys.

On the night he was arrested, Mr. Valladares was playing with the laser pointer in the sky, pointing it at stars and other objects in the back yard. When he saw the police helicopter he tried to see if he could shine the laser pointer on the helicopter. He was able to at about a half a mile away. He had no particular purpose in doing so. As the helicopter turned to him, neared him and shined its powerful light on him, Mr. Valladares realized he had done something very stupid. As soon as the helicopter turned towards him and started nearing, he turned off the laser and ran into the house. Not wanting to get in trouble with the police, he took the laser apart and hid its parts, hoping to not get in trouble while on probation.

The police arrived, found the laser pieces and eventually Mr. Valladares confessed to what he had

done taking responsibility for the offense as he has plead to it before the Court.

Mr. Valladares is remorseful for his actions. If he had truly thought about or understood the nature of the risk he created, he would not have done so. Mr. Valladares does not have disrespect for law enforcement, nor was it his intention to cause harm to the police helicopter pilot. He simply was doing a very stupid and very childish act without thinking of the consequences.

Mr. Valladares is thirty years old. He has been using drugs and drinking alcohol since a young age and his criminal history appears to reflect this substance abuse problem. This case has served as a wake-up call in a sense to Mr. Valladares. The very serious consequences, in both state and federal court, of his very stupid actions, have made him see that his life had been going nowhere for a long time.

Mr. Valladares is an extremely positive and affable person. He is determined to make this prison time his last. He is determined to put his life on a positive path and take his failings and turn them into positives to help others. He would like to be a certified drug counselor. He has participated in every program at the jail he has been able to participate in, and has kept in touch with his proposition 36 counselor for inspiration and guidance during his pretrial custody.

Mr. Valladares recognizes that he needs to grow up and he has a positive and accepting view of his future. He is realistic about his life and his situation and what it will take to make it a positive experience and not a negative one. He wishes to accept his punishment and be the most productive and positive person he can be. Mr. Valladares will take advantage of drug treatment in prison and any other vocational and educational programs he can participate in. He desires to be a role model for those who have struggled with criminal pasts. He wants to be an example of someone who took a criminal past and became a productive person who helps others. He will take advantage of the benefits of Supervised Release. He looks forward to a law-abiding life.

On the night of this offense, Mr. Valladares did not set out to commit a crime. He did not even leave his own back yard. After some long hours parking cars, he decided to have some beers, and play with this "toy" he had. He certainly never specifically intended to hurt a law enforcement officer or anyone else. While an incredibly stupid and careless act, thirty months incarceration is certainly sufficient punishment for the nature of this offense.

The statute and the guidelines in this case were certainly intended to cover a wide range of

conduct, and although the statute prohibits acts of intentional terrorism, it is broad and also intended to cover reckless conduct. Under the statute the terrorist who is intentionally attempting to storm the cockpit and hurt the pilots of the plane is treated under the same law as the arguably hapless Mr. Valladares. While the guidelines section 2A5.2 - Interference with Flight Crew Member or Flight Attendant; Interference with Dispatch, Navigation, Operation, or Maintenance of Mass Transportation Vehicle - was properly used by probation in this case, counsel submits that the Court should also look to guidelines section 2A2.4 - Obstructing or Impeding Officers - which would have been used if, for example, Mr. Valladares had shown a laser on a federal law enforcement officer while driving a car. Under that guideline which has a base offense level of 10, even with enhancement for using a dangerous weapon, his guidelines range would be 24-30 months. *See Presentence Investigation Report at paragraph 64*.

When examining the conduct here, and the state of mind behind it, Counsel submits that a sentence of 30 months is sufficient, but not greater than necessary, to serve the purposes of the sentencing factors that the Court must consider.

**FACTORS TO BE CONSIDERED IN FASHIONING A REASONABLE SENTENCE**

As the Sentencing Guidelines are merely advisory, this Court must fashion a reasonable sentence for Mr. Valladares taking into account all of the factors delineated in 18 U.S.C. §3553.

Given the specific circumstances of Mr. Valladares' case, undersigned counsel recommends the following findings relating to 18 U.S.C. §3553:

(1) As the Court has before it, Mr. Valladares is thirty years old, is close to his family, has a less than stellar past, but was acting with recklessness, and not specific intent, when playing with a laser outside at night and shining on a police helicopter. Although he has a criminal record, the longest time he has spent in custody is a year and a half (50% of a three year sentence).

The history and characteristics of Mr. Valladares demonstrate that he is ready to grow up, and that he is amenable to treatment and rehabilitation. He hopes to leave prison and participate in a life where he will be a role model for those overcoming their past to move on to a better future.

(2) A thirty month sentence for recklessly shining a laser pointer at a police helicopter reflects the seriousness of the offense, promotes respect for the law, and serves as a just punishment for Mr. Valladares' actions. It is a sentence that certainly deters him specifically from drinking and doing stupid

4

things in the future, as well as a message to the community that the Court and the government take such actions seriously.

Mr. Valladares deserves to be punished for his actions, and particularly needs the time incarcerated in order to set his life on a positive path. He needs drug treatment and any vocational and educational programs available in order to aid his rehabilitation which has already begun while in custody for this offense. Such a sentence will afford him the opportunity to participate in and benefit from programs and will serve as a reminder and encouragement upon his release to do better in the future.

(3) There is no mandatory minimum and the Court could sentence Mr. Valladares from probation to 20 years in prison.

(4) The advisory Sentencing Guidelines in this case advise a sentence of 37-46 months if the Court uses 2A5.2, or 24-30 months if the Court were to use 2A2.4.

(5) Counsel is not aware of any pertinent policy statements by the Sentencing Commission that would pertain to Mr. Valladares' case.

(6) Counsel is aware of only one other case in this District out of Fresno (United States v. Jared Dooley and Kendra Snow, 08-08 (LJO)) involving this same conduct, shining of a green laser at a helicoper, where the two defendants were sentenced to 24 and 18 months respectively. Certainly a sentence of 30 months would be proportionate to the sentences in that case and appropriately recognizes that Mr. Valladares may have a greater criminal history category than those defendants did.

(7) There is no restitution in this case.

A sentence of 30 months incarceration will serve the purposes of sentencing in 18 U.S.C. section 3553(a)(2) because such a sentence will "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes." Further, it is sufficient, but not greater than necessary to serve those purposes.

## **CONCLUSION**

For the above reasons, and any other that Court deems fair and just after the sentencing hearing in this case, the defendant requests that the Court sentence him to 30 months incarceration.

1  Dated: August 30, 2009

Respectfully submitted,

DANIEL BRODERICK
Federal Defender

/S/ Lexi Negin
_____
Lexi Negin
Assistant Federal Defender

Attorney for Defendant
Balltazar Valladares